## FLEMING *v*. OATES.

### Opinion delivered January 17, 1916.

AUTOMOBILES—USE OF HIGHWAYS—PASSING TEAMS GOING IN SAME DIRECTION.—The requirement in Act 134, p. 94, Public Acts of 1911, that the driver of an automobile, upon a public highway, *shall come to a full stop* when he observes that an approaching horse, ridden or driven by another traveler, is about to become frightened, does not impose the absolute duty upon the driver of the automobile to stop his machine becase a team in front, going in the same direction, appears to be frightened; under those circumstances it should be left to the trial jury to say whether, under all the circumstances of the case, the driver of the automobile has been guilty of negligence.

Appeal from Conway Circuit Court; *M. L. Davis,* Judge; reversed.

*W. P. Strait,* for appellant.

1. The facts do not justify a recovery in this case for negligence, and it was error to refuse to direct a ver-

dict. The undisputed evidence shows contributory negligence. This was one of those unforeseen accidents which are unexpected and unavoidable. Only ordinary prudence and care is required by the law. 96 N. Y. Supp. 45; 36 Ark. 607; 94 *Id.* 252. If after discovering the danger, it was too late to avert the accident, and the defendant did all he could to avoid the injury, then he was not guilty of negligence nor liable under the statute. 10 L. R. A. (N. S.) 655. No presumption of negligence arises by reason of the injury and the burden was on appellee to prove negligence. 97 Ark. 469.

2. The law imposes upon appellee, when in danger, the duty to exercise all the reasonable means at her command to prevent probable injury, and a failure to do so is contributory negligence. Sutherland on Dam., § 90; 105 N. S. 224; 67 Ark. 371; 102 *Id.* 251; 72 *Id.* 593; 94 *Id.* 252; 63 *Id.* 65; 81 *Id.* 5; 36 *Id.* 37; 48 *Id.* 106; 76 *Id.* 536; 59 Atl. 369; 76 N. E. 224; 74 *Id.* 615.

3. Noises incidental to motor vehicles are not in themselves evidence of negligence, and a *failure to stop the motor and machinery* is not necessarily negligence. 2 Ruling Case Law, 1193; 107 N. W. 325; 113 *Id.* 904; 14 L. R. A. (N. S.) 521; 134 Iowa 374.

4. When two or more persons unite in the joint prosecution of a common purpose, * * * the negligence of one will be implied to all. 58 L. R. A. 74; 59 Am. Rep. 340; 39 Minn. 328; 62 *Id.* 71; 74 N. W. 174; 83 *Id.* 386; 84 *Id.* 728. In several instructions requested, there was error for which the judgment should be reversed.

*Edward Gordon*, for appellee.

The instructions given for appellee are clearly within the law as to negligence and contributory negligence, as well as to imputed negligence. 72 Ark. 572; 58 L. R. A. 74. As to the burden of proof, see 55 Ark. 547; 74 *Id.* 320; 75 *Id.* 347. No prejudicial error appears in the court's charge to the jury; their verdict is final, as there was evidence to sustain it.

McCULLOCH, C. J. This is an action instituted by appellee against appellant to recover damages alleged to

have arisen from the negligent act of appellant in frightening a team of horses drawing a hack in which appellee was riding. It is alleged that the team became frightened from the automobile driven by appellant, and that he was guilty of negligence in failing to exercise proper care after discovering that the team was frightened.

Mrs. Oates, the appellee, resided in Oklahoma and came to Conway County, Arkansas, to visit her relatives. She was met at Plummerville by her brother, who at the time the injury occurred was taking her out to a village north of Plummerville. As they drove along the public road, appellant approached with an automobile going in the same direction and passed them at the foot of a long hill. The horses became frightened and turned over the hack and appellee received personal injuries, for which the jury allowed her a small amount of compensation.

According to the narrative of appellee and her brother, who was driving the hack, appellant was warned that the team was frightened, but, notwithstanding that fact, he dashed by at a high rate of speed without making any effort to prevent the horses becoming further frightened. Mrs. Oates testified that they had just met another automobile, which, to some extent, frightened the team, and that when she saw the appellant in his automobile coming over the top of the hill, she rose up in the hack and waived to appellant and called out to him, begging him not to pass them, but that appellant came on at a high rate of speed with the machine making a great deal of noise, and that as he passed them, the team became very much frightened and ran away, and that turned the hack over. The testimony of appellee is corroborated by that of her brother, and perhaps by other witnesses. It was sufficient to warrant a finding that appellant failed to exercise proper care to avoid frightening the team of horses.

On the other hand, the testimony adduced by appellant and his witnesses tends to show that he was free from any fault, and that the injury was caused by recklessness of appellee's brother, who was driving the hack, and who, it is claimed, was intoxicated at the time. Appellant tes-

tified that as he came over the hill, he saw the team near the bottom of the hill, and that he shut off his engine and glided on down the hill as usual, and that as he approached the team was turned slightly to the left to permit him to pass, and that he did pass in safety, but that the horses veered a little to the right and the driver dropped the reins and lost control of them, which caused the horses to turn and upset the hack.

It is thus seen that the testimony presents a sharp conflict as to whether or not appellant was guilty of any negligence which caused the team to become frightened. The law of the case has been pretty well settled by the decisions of this court in discussing the relative rights of travelers on the road in different modes of conveyance, and the relative rights of automobilists and pedestrians. *Millsaps* v. *Brogdon,* 97 Ark. 469; *Minor* v. *Mapes,* 102 Ark. 351; *Butler* v. *Cabe,* 116 Ark. 26, 171 S. W. 1190.

There are many grounds urged here for the reversal of the judgment, but we content ourselves with a discussion of one which involves the consideration of two instructions given by the court over appellant's objection, as follows:

"2. You are instructed that if you find from the evidence that the defendant knew, or by the use of ordinary care could have known, that the team which was hitched to the said wagon was frightened at the approach of his automobile, and that he failed to stop said automobile and stop his engine, but continued toward said team, and that as a result of his failure to stop said automobile and engine, the team ran away, and thereby plaintiff was injured, you will find for plaintiff in such sum as in your judgment the evidence justifies."

"12. Whenever it shall appear that any horse, ridden or driven by any person upon any of said streets, roads and highways, is about to become frightened by the approach of any such motor vehicle it shall be the duty of the person driving or conducting such motor vehicle to cause the same to come to a full stop until such horse or horses shall have passed, and, if necessary, assist in pre-

venting accident. Any person convicted of violating this section shall be fined in any sum not to exceed two hundred dollars."

Instruction No. 12 is an exact copy of section 12 of the act of March 24, 1911,* regulating the use of automobiles upon public highways, but our conclusion is that that section has no application to the facts of the present case, and that the court erred in giving it to the jury as one of the instructions in the case. The substance of the statute is also embraced in instruction No. 2. The purpose of that statute was to require drivers of automobiles to come to a full stop when they observe that an approaching horse, ridden or driven by another traveler, is about to become frightened. The statute imposes an absolute duty on the driver of the automobile to stop, and liability for damages arises from a violation of that statute. We think, however, that the statute was not intended to impose the absolute duty upon the driver of an automobile to stop his machine because a team in front, going in the same direction, appears to be frightened, but under those circumstances, it is left to a trial jury to say whether under all the circumstances of the case the driver of the automobile has been guilty of negligence.

Doubtless the Legislature took into consideration the hardship of requiring the driver of an automobile to stop his car merely because a team in front of him appears to be frightened. The automobile, of course, travels faster than vehicles drawn by horses, and if this statute applied it would prevent the driver of an automobile from passing the slower vehicle. On the other hand, it is perfectly reasonable to require the driver of a machine, when meeting another traveler driving a team, to stop and let the team pass. The Legislature doubtless had this distinction in mind in failing to put into the statute a positive requirement that an automobile overtaking another kind of vehicle should stop, for such a requirement would impede travel almost to the extent of denying the driver of an automobile the use of the road. The lawmakers evidently

_____
*Act 134, p. 94, Public Acts 1911.

intended to omit any definite requirement applicable to a state of facts such as is shown in this case so that the question of negligence or due care could rest upon settled principles on that subject. This case should have been submitted to the jury on the question whether appellant exercised ordinary care to avoid frightening the team, without giving to the jury the statute which imposed the absolute duty of stopping until the team got out of the way.

For the error in giving those two instructions, the judgment must be reversed and the cause remanded for a new trial. It is so ordered.